**The document below is hereby signed.**

**Dated: July 24, 2012.**



_____
S. Martin Teel, Jr.
U.S. Bankruptcy Judge

```
              UNITED STATES BANKRUPTCY COURT
               FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
CLARENCE LUSANE,               )   Case No. 11-00889
                               )   (Chapter 7)
           Debtor.             )   Not for publication in
                               )   West's Bankruptcy Reporter.
```

MEMORANDUM DECISION REGARDING
ARC CONSTRUCTION SERVICES, INC.'S MOTION TO CONVERT OR DISMISS

Alleging bad faith on the part of the debtor, based on his ability to repay his debts, Arc Construction Services, Inc. ("Arc") has filed a motion dismiss the debtor's case under 11 U.S.C. § 707 or alternatively to convert the case to chapter 13. The debtor responds that bad faith is not a cause for dismissal under § 707(a), that § 707(b) applies only to debtors whose debts are primarily consumer debts, and that the motion is untimely. The chapter 7 trustee's response also opposes Arc's motion to dismiss. For the following reasons, Arc's motion will be denied.

I. Section 707(b) Dismissal

The debtor, Lusane, declared that his debts were not primarily consumer debts, but Arc questions this classification. Arc argues that Lusane's debts are primarily consumer debts, such

that § 707(b) applies, and that this case should be dismissed for abuse under that provision.  However, the issue of whether Lusane's debts are primarily consumer debts is an academic point because Arc's motion to dismiss under § 707(b) is time-barred.  The motion was filed on May 14, 2012, well beyond the deadline of 60 days after January 5, 2012, the first date set for the § 341 meeting of creditors.  See Fed. R. Bankr. P. 1017(e).[1]  Additionally, Arc did not file a timely request for an extension of the time to file the motion to dismiss.  Consequently, Arc is barred from seeking a dismissal pursuant to § 707(b).

---

[1] Rule 1017(e) provides in part, with exceptions not applicable here, that:

> [A] motion to dismiss a case for abuse under § 707(b) or (c) may be filed only within 60 days after the first date set for the meeting of creditors under § 341(a), unless, on request filed before the time has expired, the court for cause extends the time for filing the motion to dismiss.

II. Section 707(a) Dismissal

Arc argues in its motion to dismiss and its reply that bad faith is a basis for dismissal under § 707(a). Section 707(a) provides:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees and charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

The court, without deciding the issue, will assume in favor of the creditor that the court has a reservoir of power to dismiss a case for bad faith under § 707(a).[2]

A. Ability to Pay

Arc maintains that the primary source of bad faith in this

---

[2] The D.C. Circuit has not weighed in on whether § 707(a) cause includes a lack of good faith. The Third and Sixth Circuits have held that a lack of good faith is cause for dismissal under § 707(a). *See Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000); *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1127 (6th Cir. 1991). The Eighth and Ninth Circuits have rejected bad faith as a basis for dismissal under § 707(a). *See Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1193 (9th Cir. 2000); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir. 1994) (recognizing that "some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith," but declining to hold that bad faith is cause for § 707(a) dismissal).

case is Lusane's ability to repay his creditors.  According to Arc,

> Mr. Lusane remains gainfully employed as a Professor (and, for a period of time, Interim Department Head) by American University, receives royalty income from a number of published books, and has a consulting business on the side. He declared approximately $96,000 in income for January 1- November 25, 2011. His gross income for 2011 was at least $100,000.

Motion to Dismiss ¶ 31.

However, a debtor's ability to pay creditors cannot be cause for a § 707(a) dismissal.  This is true whether the debtor's debts are principally consumer debts or non-consumer debts.

In the case of a consumer debtor, § 707(b) expressly contemplates the debtor's ability to pay will be a factor in determining whether the case should be dismissed for abuse, and sets forth a detailed means test for determining whether the debtor ought to be deemed able to repay the debtor's debts.  It does not make sense for a consumer debtor's ability to pay to also be a proper basis for dismissal under § 707(a).[3]  Congress provided a specific provision to deal with dismissing a consumer

---

[3]   Prior to the enactment in 2005 of the § 707(b) means test, § 707(b) permitted dismissals based on substantial abuse but Rule 1017(e) set a deadline for motions to pursue a motion to dismiss for substantial abuse.  In enacting an amended § 707(b) with a means test, Congress presumably was aware that Rule 1017(e) set a deadline for § 707(b) motions, and would not have intended § 707(a) "cause" to include ability to pay and thereby to enable a creditor to circumvent such a deadline for invoking § 707(b) by resorting to § 707(a).  (As was predictable, an amended Rule 1017(e) indeed was adopted to address motions to dismiss based on the new means test).

4

debtor's case based on ability to pay, and that provision is § 707(b).  If "cause" for dismissal under § 707(a), a provision applicable to *all* debtors, does not include ability to repay in the case of a consumer debtor, the term "cause" cannot, chameleon-like, include ability to pay in the case of a non-consumer debtor.

Congress confined consideration of ability to pay to § 707(b), a provision which does not apply to non-consumer debtors.  Though section § 707(b) sets forth that a debtor's ability to pay gives rise to a presumption of abuse, Congress chose to exempt non-consumer debtors from this provision.[4] Congress having elected to treat abuse based on ability to repay as a ground for dismissal in § 707(b), and to exclude non-consumer debtors from that provision, treating § 707(a) as including ability to pay as "cause" for dismissal would be contrary to congressional intent.  *But see In re Rahim*, 442 B.R. 578, 584 (Bankr. E.D. Mich. 2010) ("If Congress fully intended to allow chapter 7 relief to a debtor with primarily business debt regardless of income, expenses, ability to pay or lack of need, surely it would have so stated explicitly in the bankruptcy code.").  Accordingly, whether or not Lusane's debts are

---

[4] Perhaps Congress decided that business debtors ought not be required to resort to chapter 11 or chapter 13 because there is an interest in allowing entrepreneurs and other business persons to get back on their feet promptly.

5

classified as primarily consumer debts, "cause" under § 707(a) does not include the ability of the debtor to repay his creditors.[5] *But see Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364, 371 (3d Cir. 2007) (holding that ability to pay alone is not sufficient for dismissal under § 707(a), but the court may consider it together with other factors).

### B. Other Factors

The other factors that Arc alleges support dismissal of this case for bad faith are that: "the petition was filed in response to Arc's collection actions and not a sudden calamity; Mr. Lusane's budget is artificially inflated and unreasonable; his schedules and statements do not reasonably reflect his true

---

[5] The court is mindful that other courts have relied on the legislative history of § 707 in reaching the conclusion that ability to pay by itself is not "cause" under § 707(a). *See Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364, 374 (3d Cir. 2007) (relying on congressional intent as indicated by the legislative history of § 707 in determining that a court's finding of bad faith may not be based "exclusively or primarily on a debtor's substantial financial means."); *In re Piazza*, 451 B.R. 608, 615 n.30 (Bankr. S.D. Fla. 2011); *Deglin v. Keobapha (In re Keobapha)*, 279 B.R. 49, 53 (Bankr. D. Conn. 2002); *Kirby v. Spatz (In re Spatz)*, 221 B.R. 992, 994 (Bankr. M.D. Fla. 1998) ("It is well established and supported by Legislative History that the fact that a debtor is willing and able to pay his debts outside of bankruptcy does not constitute adequate cause for dismissal under section 707(a)."); *In re Goulding*, 79 B.R. 874, 876 (Bankr. W.D. Mo. 1987) ("It is difficult to contemplate how Congress could more emphatically have stated that the debtor's net worth or future prospects is not "cause" as the word is used in Section 707 for dismissal."). However, I do not find it necessary to resort to the legislative history to conclude that ability to pay is not cause for dismissal under § 707(a).

financial condition." Motion to Dismiss ¶ 79.[6]

Misrepresentations on schedules and statements, and the fact that the petition was filed in response to the judgment do not rise to the magnitude of bad faith sufficient to justify a finding of bad faith. *See In re Tamecki*, 229 F.3d at 208 (stating that bad faith "should not [be] lightly infer[red]"); *In re Zick*, 931 F.2d at 1129 (explaining that dismissal based on bad faith "is generally utilized only in [] egregious cases."). If there are inaccuracies on the schedules or statements, and they were made fraudulently, that may be grounds for a denial of the discharge under 11 U.S.C. § 727, but that would not establish that Lusane filed his petition seeking a discharge in bad faith.

---

[6] Arc's contentions regarding § 707(b) may be pertinent to its assertion of bad faith. Arc alleges that Lusane's schedules are misleading and that Lusane's debts are primarily consumer debts. Arc asserts that, based on Lusane's testimony in his 2004 examination, "at most 31% of the total credit card debt would have been non-consumer debt." Motion to Dismiss ¶ 71. In support, Arc contends that

> 82. Mr. Lusane's schedules and statements demonstrate a lack of candor. As an example, Mr. Lusane listed Maria Pereira by name as a co-debtor on Schedule H, but referred to her as his "girlfriend" on Schedule I creating the impression that Maria Pereira and the "girlfriend" were two different people. Mr. Lusane also failed to disclose the existence of substantial loans or gifts to Maria Pereira during the 12 months prior to the Petition Date, presumably to prevent an investigation or filing of preference action against her.

Motion to Dismiss ¶ 82.

### III. Conversion to Chapter 13

Finally, pursuant to 11 U.S.C. § 707(c), the debtor's consent is required to convert this case to a chapter 13 case, and the debtor has not consented. Therefore, Arc's request to have the court convert the case to a chapter 13 case must be denied.

### IV. Conclusion

For the foregoing reasons, Arc's motion to dismiss or convert (Dkt. No. 27) based on § 707(a) or (b) will be denied. A separate order follows.

[Signed and dated above.]


Copies to: Recipients of e-notifications.