The document below is hereby signed.

Signed: April 19, 2013



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                              )
                                   )
CLARENCE LUSANE,                   )     Case No. 11-00889
                                   )     (Chapter 7)
                Debtor.            )     **Not for Publication in**
                                   )     **West's Bankruptcy Reporter**

MEMORANDUM DECISION AND ORDER RE MOTION TO EXTEND
TIME TO FILE A COMPLAINT TO OBJECT TO DEBTOR'S DISCHARGE

Arc Construction Services, Inc. has filed a motion to extend
the time to file a complaint objecting to the debtor's discharge
under Rule 4004(b)(2).[1]  In support of its motion, Arc contends
that its failure to file a complaint objecting to discharge is
the result of the debtor's delay tactics, including a delay in
responding to Arc's request for production of documents.  Second,
Arc contends that it reasonably believed that it had obtained an

---

[1] In the related adversary proceeding of *Arc Construction
v. Lusane*, Adv. Pro. No. 12-10022, the court dismissed Arc
Construction's complaint objecting to discharge as untimely under
Rule 4004(a) because the deadline for filing objections to
discharge was March 5, 2012, and Arc did not file its complaint
objecting to discharge until May 14, 2012.  The court also ruled,
however, that Rule 4004(b)(2) shall apply to this case and
granted Arc leave to file an amended complaint accompanied by a
Rule 4004(b)(2) motion by March 11, 2013.

extension of the filing deadline, and to the extent it had not

obtained such an extension, it reasonably believed that no

extension was required because it could permissibly file a "gap

period" complaint based upon the information it learned after the

March 5, 2012 bar date.[2]

Rule 4004(b) provides that:

> (1)   On motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge.   Except as provided in subdivision (b)(2), the motion shall be filed before the time has expired.

> (2)   A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection. The motion shall be filed promptly after the movant

---

[2]   The briefs filed by Arc in support of its motion for summary judgment in the adversary proceeding, in opposition to the debtor's motion for judgment on the pleadings or for summary judgment in the adversary proceeding, and in support of Arc's motion for relief from orders filed in the main case, reflect that Arc's failure timely to file a complaint objecting to discharge was due, at least in part, to Arc's mistaken belief that the deadline for filing such complaints had been extended to May 14, 2012.

discovers the facts on which the objection is based.[3]
Thus, to prevail on its motion to extend, Arc must first, under
subdivision (1), show cause to extend the time to object.  If Arc
establishes cause, Arc must further show that the objection is
(A) "based on facts that, if learned after the discharge, would
provide a basis for revocation under § 727(d) of the Code," and
(B), that Arc "did not have knowledge of those facts in time to
permit an objection" prior to the bar date.  Finally, Arc will
need to show that the filing of the motion to extend was
sufficiently prompt to warrant relief under Rule 4004(b)(2).

---

[3]  The Advisory Committee Notes to the 2011 Amendments
explain that Rule 4004(b) was amended to add subdivision (2) in
order:

> to allow a party, under specified circumstances, to seek
> an extension of time to object to discharge after the
> time for filing has expired.  This amendment addresses
> the situation in which there is a gap between the
> expiration of the time for objecting to discharge and the
> entry of the discharge order.  If, during that period, a
> party discovers facts that would provide grounds for
> revocation of discharge, it may not be able to seek
> revocation under § 727(d) of the Code because the facts
> would have been known prior to the granting of the
> discharge.  Furthermore, during that period the debtor
> may commit an act that provides a basis for both denial
> and revocation of the discharge.  In those situations,
> subdivision (b)(2) allows a party to file a motion for an
> extension of time to object to discharge based on those
> facts so long as they were not known to the party before
> expiration of the deadline for objecting.  The motion
> must be filed promptly after discovery of those facts.

I

Although extensions may only be granted "for cause," Rule
4004(b) fails to elaborate on what constitutes cause.  *See* 9 Alan
N. Resnick and Henry J. Sommer, Collier on Bankruptcy ¶
4004.03[2] (16th ed. 2013).  *See also In re Chatkhan*, 455 B.R.
365, 368 (Bankr. E.D.N.Y. 2011) (compiling cases in support of
proposition that extensions will not be granted where party
seeking extension fails diligently to pursue discovery prior to
expiration of the bar date, with examples including a denial of
extension where: (1) creditor waited until five days prior to
expiration of deadline to file a Rule 2004 motion; (2) creditor
failed to attend 341 meeting or request a Rule 2004 exam; (3)
creditor waited until last day of objection period to move for
Rule 2004 exam; (4) creditor waited until 10 days before
expiration of deadline to pursue 2004 exam, and (5) creditor
waited until 11 days prior to expiration of deadline to request
2004 exam)).

Determinations of cause under Rule 4004(b) are left to the
court's discretion, and factors to be considered include "(1)
whether the creditor had sufficient notice of the deadline and
the information to file an objection, (2) the complexity of the
case, (3) whether the creditor exercised diligence, (4) whether
the debtor refused in bad faith to cooperate with the creditor,
and (5) the possibility that proceedings pending in another forum

4

will result in collateral estoppel on the relevant issues." *In re Nowinski*, 291 B.R. 302, 306-07 (Bankr. S.D.N.Y. 2003) (internal citations omitted). The decisions addressing cause, however, have principally been in the context of Rule 4004(b)(1). Rule 4004(b)(2) deals with a ground for denial of discharge that was not discovered until after the bar date and that would have been a basis for revoking the discharge had that discharge been entered the moment the bar date passed. It is thus arguable that cause exists to enlarge the time under Rule 4004(b)(2) whenever it is only the fluke that the discharge was not entered immediately that results in the creditor having to seek an enlargement to object instead of seeking a revocation of discharge. *See* n. 8, *infra*. Nevertheless, I will apply the factors that the case law has articulated for finding cause in order to see if the outcome would be altered.

A.

    (1)  Arc had adequate notice of the case to permit the filing of a timely objection to discharge.

The debtor commenced this bankruptcy case by the filing of a voluntary petition on November 25, 2011. Arc was included on the debtor's mailing list, which was filed at the commencement of the case, although according to Arc's motion, Arc first learned of the debtor's case on December 21, 2011. Either way, Arc had adequate notice of the case to permit the timely pursuit of discovery and the filing of a timely complaint objecting to

5

discharge.  Arc does not allege that it lacked timely notice of
the bar date.  Arc does contend, however, that it believed the
bar date had been extended, but a misunderstanding of that nature
does not amount to a lack of notice.

(2) The case is not unusually complex.

There does not appear to be anything particularly complex
about this case.  Although Arc's motions to extend certain
deadlines and the resulting court orders gave rise to a dispute
regarding the applicable deadline for objecting to discharge, the
underlying facts of this case are relatively straightforward.

(3)  Arc filed its motion to extend under Rule 4004(b)(2)
    with sufficient promptness.

The court will treat the date of Arc's filing of the
original complaint objecting to discharge, or May 14, 2012, as
the relevant date for purposes of evaluating the promptness of
Arc's motion to extend the deadline for filing an objection to

discharge under Rule 4004(b)(2).[4]  Although the motion for an
extension was not filed until March 11, 2013, the filing of the
original complaint gave rise to a thoroughly briefed dispute
regarding the applicable bar date and the related question of
whether a "gap-period" complaint should be permitted.  This was
sufficient to put the debtor on notice that Arc was alleging a
basis for pursuing the complaint notwithstanding the March 5,
2012 bar date.

     (4)  Arc exercised adequate diligence.

     On March 5, 2012, the last day for filing a timely objection
to discharge, Arc filed a motion seeking leave to conduct a Rule
2004 examination of the debtor and of the debtor's "girlfriend"
and "step-daughter."  In that motion, Arc seeks leave to
investigate the debtor's assets, income, and expenses based upon

---

    [4]  Arc complains that the court's application of Rule
4004(b)(2) to this case unfairly alters Arc's substantive rights
and duties when compared to the rights it would have enjoyed and
the duties that would have applied had the court instead treated
Arc's complaint as a valid "gap period" complaint.  As the
Supreme Court order adopting Rule 4004(b)(2) directed, the rule
"shall govern in all proceedings in bankruptcy cases thereafter
commenced and, insofar as just and practicable, all proceedings
then pending."  The gap period did not begin to run until after
the bar date of March 5, 2012.  There is no manifest injustice
in applying the new rule to events arising in that gap period,
well after the effective date of the rule, and it is thus "just
and practicable" to treat the rule as applicable.  *Farmers Ins.
Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011).
Moreover, I reject the assertion that had the court ruled that
Rule 4004(b)(2) does not apply, pre-Rule 4004(b)(2) case law
would have conferred upon Arc an absolute right to pursue a gap
period complaint.

the following:

> 7.   On the Petition Date, Debtor filed his Schedules and
> Statement of Financial Affairs.   Schedule B lists the
> copyrights to 8 books as well as certain other actions
> against third parties.   Debtor's Schedule I indicates
> three "dependants" [sic] including an unidentified 40
> year old girlfriend and an unidentified 22 year old step-
> daughter, however, no income for these individuals is
> listed and based on Debtor's Schedule J it does not
> appear that these adult individuals are contributing [to]
> the household monthly expenses.   Further, the Schedule J
> expenses include excessive living expense like $200 per
> month for "cable/internet/home phone" and $1,000 per
> month for food, and luxury items like gym memberships,
> clubs, monthly retirement contributions.   Without these
> inflated expenses, the Debtor would have been required to
> file a Chapter 11 or 13 proceeding and not a Chapter 7.

According to Arc's March 5, 2012 motion to extend, counsel for

Arc had previously made "multiple attempts to contact counsel for

the Debtor regarding a Rule 2004 Examination of the Debtor, [and]

Counsel for the Debtor [] returned none of Arc's inquiries."   The

Rule 2004 examination was held on March 30, 2012, more than three

weeks after the bar date.[5]

Arc's stated basis for seeking a Rule 2004 examination of

the debtor, his "girlfriend," and his "step-daughter" was to

investigate the debtor's expenses as disclosed on the debtor's

schedules.   The debtor's schedules have been publicly available

---

[5]   Arc alleges that the debtor's attorney did not respond to
informal communications regarding a Rule 2004 examination.   The
court is not prepared to treat that as bad faith conduct or as
constituting delay tactics on the debtor's part.   The Rules
provide a very clear mechanism for how to pursue a Rule 2004
examination, and that is by the filing of a motion with the
court.

on the court's docket since November 25, 2011, and if Arc wished

to investigate the overall reasonableness of the debtor's

disclosed expenses, it had ample opportunity to do so prior to

the March 5, 2012 bar date.  Arc's complaint, however, does not

simply allege that the debtor's expenses are unreasonably high.

Instead, Arc alleges that some of the claimed expenses are

altogether improper because they are attributable to the debtor's

support of a non-family member, Jessica Pereira, whom the debtor

cannot claim as a legal dependent.  On his schedules, the debtor

inaccurately listed Jessica Pereira as his stepdaughter (without

identifying her by name), a misrepresentation that Arc did not

learn of until after the bar date had passed.  Although Rule

4004(a) places the burden on parties in interest to exercise

diligence in pursuing objections to discharge,  Arc did not learn

that this particular representation was untrue until the Rule

2004 examination of the debtor, and failure to uncover such a

misrepresentation is attributable to the debtor's own

misstatement and not Arc's lack of diligence.  The same reasoning

applies to the late-discovered fact that, contrary to his

schedules, the debtor does not receive a $100 monthly income

contribution from his girlfriend, and contrary to his statement

of financial affairs, he did make prepetition transfers to his

girlfriend or her business.[6]  The court finds that Arc exercised

adequate diligence in pursuing its complaint objecting to

discharge to the extent it is based upon information learned at

of after the Rule 2004 exam.[7]

> (5)  The debtor is not to blame for Arc's failure timely to
> file a complaint objecting to discharge.

Arc makes several allegations about the debtor's failure to

cooperate and his delay tactics.  The allegations, even if true,

do not warrant the shifting to the debtor of responsibility for

the untimeliness of Arc's complaint to the debtor.

> (6) Collateral estoppel is not applicable here.

---

[6]  Although Arc did not fail to exercise diligence with
respect to its pursuit of claims based on these late-discovered
facts, the court notes that it appears unlikely that Arc can show
the materiality of some of the alleged misrepresentations.  For
example, even if the debtor's girlfriend did not actually make a
monthly contribution of $100 to the debtor, how can creditors or
the estate claim that the debtor's listing of this amount as
additional income on his Schedule I was prejudicial to creditors
or was done with an intent to deceive?

[7]  The issue in this case is largely not one of diligence;
instead, Arc's failure to file a complaint objecting to
discharge was due, at least in part, to Arc's mistaken belief
that the bar date had been extended by court order.  If
extensions of the Rule 4004(a) deadline were governed by Rule
9006(b)(1), Arc could make a credible argument that its failure
timely to object to discharge was the result of excusable
neglect.  Rule 9006(b)(3), however, provides that Rule 4004(a)
deadlines can only be sought on the conditions set forth in Rule
4004, a provision that makes no allowance for extensions based on
a finding of excusable neglect.  That said, the record also
supports Arc's contention that notwithstanding its diligence,
certain facts did not come to light until after the passage of
the bar date, and Rule 4004(b)(2) authorizes the court to grant
parties in interest an extension of time under those
circumstances.

Finally, there is no issue of collateral estoppel present in this case.

B.

Weighing these factors, the court concludes that, to the extent Arc can satisfy the remaining criteria set forth in Rule 4004(b)(2), cause exists to grant Arc an extension of time to file a complaint objecting to discharge.[8]

II

Having established that certain claims asserted in Arc's amended complaint are based on facts as to which Arc did not have knowledge in time to permit a timely objection to discharge, and that the failure to learn those facts sooner was not due to Arc's lack of diligence, the question remains whether those claims are also "based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code."

---

[8] Engaging in the analysis of whether "cause" exists, within the meaning of Rule 4004(b)(1), to grant an extension under Rule 4004(b)(2), is largely redundant of the analysis independently called for under Rule 4004(b)(2). If a party moves for an extension under Rule 4004(b)(2), and shows, to the satisfaction of the court, (a) that the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d); (b) that the moving party did not have knowledge of those facts in time to permit an objection prior to the bar date; and (c) that it acted promptly once it became aware of those facts, it is hard to imagine a court nevertheless finding that no "cause" exists within the meaning of Rule 4004(b)(1) to permit an extension.  In short, it appears that what constitutes "cause" to permit an extension under Rule 4004(b)(2) is simply articulated with specificity in Rule 4004(b)(2) itself.

11

Rule 4004(b)(2) limits extensions of time to object to discharge sought after the expiration of the bar date to objections "based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code . . . ." Section 727(d), in turn, provides that upon request of a a creditor, a discharge shall be revoked if:

> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

> (3) the debtor committed an act specified in subsection (a)(6) of this section; or

> (4) the debtor has failed to explain satisfactorily--

>> (A) a material misstatement in an audit referred to in section 586(f) of title 28; or

>> (B) a failure to make available for inspection all necessary accounts, papers, documents, financial records, files and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586(f) of title 28.

Arc has not alleged that the debtor acquired or became entitled to acquire property such that § 727(d)(3) would apply, and it has not made any allegations pertaining to an audit such that § 727(d)(4) would apply. Accordingly, Arc must rely on either § 727(d)(1) or § 727(d)(3) to show that its objection to

12

discharge is based on the type of facts that would support the
granting of an extension under Rule 4004(b)(2).

A.

The court will start by addressing Arc's complaint as it
relates to § 727(d)(1).  To state a claim that a discharge was
obtained by fraud within the meaning of § 727(d)(1), Arc would
need to allege that "(1) the debtor knowingly and fraudulently
made a false oath in or in connection with the bankruptcy
proceeding, and (2) the oath concerned a material fact." *McDow
v. Wamsley (In re Wamsley)*, 385 B.R. 619, 624 (Bankr. N.D.W. Va.
2008).  Count II of Arc's complaint objects to the debtor's
discharge under § 727(a)(4), and is based at least in part on
facts learned after the discharge that would support a
§ 727(d)(1) claim.

First, Arc alleges that the Rule 2004 examinations revealed
that the debtor concealed $5,000 in prepetition transfers made to
the debtor's girlfriend, her business, or an entity known as
Zezeh.  The court finds that an intentional failure to disclose
$5,000 in preferential transfers, amounts that could have
potentially been recovered for the benefit of the estate and
resulted in a distribution to creditors, constitutes an omission
of fact that is sufficiently material to support a claim for
revocation of discharge under § 727(d)(1).  *See McDow v. Wamsley*

13

*(In re Wamsley),* 385 B.R. 619, 624 (Bankr. N.D.W. Va. 2008).[9]

Second, the debtor listed a 22-year old "step-daughter" on his Schedule I as a dependent. This was inaccurate. Although the debtor characterizes his girlfriend's daughter, Jessica Perira, as his step-daughter, the debtor is not married to his girlfriend. The representation that he has a 22-year old dependent was false. This misrepresentation might not have been material. It might be material, however, if:

- the debtor did not incur expenses in taking care of Jessica as though she were actually a dependent (but Arc does not contend that the debtor did not incur such expenses); or

- the expenses as a matter of law could not permissibly be treated as expenses on behalf of a dependent; the expenses could not appropriately be considered in determining the debtor's ability to repay creditors; and the ability to repay could have an impact on the case.

The debtor's debts, however, are principally *not* consumer debts, and thus the so-called means test of 11 U.S.C. § 707(b)(2) (under

---

[9] Count III of Arc's amended complaint asserts an objection to discharge directly under § 727(d), a provision that on its face applies only to the revocation of a discharge already granted. Because the debtor has not yet received a discharge, and in accordance with the court's prior ruling addressing the applicability of Rule 4004(b)(2) to these proceedings, the court will dismiss Count III of the complaint as premature.

14

which Jessica's status as a dependent, or not a dependent, would
matter) does not apply.  Despite the inapplicability of
§ 707(b)(2), a court has a reservoir of power under 11 U.S.C.
§ 707(b)(1) to dismiss or convert a chapter 7 case if granting
relief under chapter 7 would constitute an abuse.  Arc contends
that the misrepresentation regarding Jessica being a dependent
was material.  The debtor asserts that the non-dependent status
could not have been material, and that the debtor did not list
Jessica as a dependent with an intent to deceive.  On this Rule
4004(b)(2) motion, however, it is inappropriate to resolve those
issues which are fact bound.  Arc will be allowed to amend its
complaint, and the debtor at that time can seek dismissal before
or at trial on the issues of materiality and of an intent to
deceive.

Arc will not be granted leave to pursue one of Arc's claims
based on facts discovered only after the bar date.  Specifically,
Arc contends that the Rule 2004 examination revealed that the
debtor had mischaracterized some of his debts on his schedules as
business debts when they were, in fact, personal consumer debts.
Any misrepresentation in this regard, even if it is a fact
learned by Arc only after the bar date had passed, is immaterial
given that Arc's stated claim in the amount of $364,448.94, a
debt that the parties agree is properly classified as a business
debt, is for a sum that exceeds the aggregate of the debtor's

15

remaining debts.[10]  Thus, even if all of the debtor's remaining

debt is more properly characterized as consumer debt, his

representation that he is a debtor with primarily non-consumer

debts remains accurate.  Because the alleged misrepresentation

could not have had an impact on the case, the misrepresentation

is immaterial, would not warrant a revocation of discharge had it

been learned only after the granting of the discharge, and

pursuit of this claim will not be allowed.

B.

Next the court considers whether Arc's complaint falls

within § 727(d)(3), which provides that creditors may seek a

revocation of a debtor's discharge if the debtor committed an act

specified in § 727(a)(6).  A revocation of discharge based upon

an act specified in § 727(a)(6) would thus require a showing that

the debtor refused, in the case,

> (A) to obey any lawful order of the court, other
> than an order to respond to a material question or to
> testify;

> (B) on the ground of privilege against self-
> incrimination, to respond to a material question approved
> by the court or to testify, after the debtor has been
> granted immunity with respect to the matter concerning
> which such privilege was invoked; or

> (C) on a ground other than the properly invoked

---

[10]  The debtor scheduled Arc's claim as in the amount of
$195,000.  Arc has filed a proof of claim in the amount of
$367,448.94.  At the hearing, Arc's attorney agreed that the
amount asserted in Arc's proof of claim, and not the amount
scheduled by the debtor, should govern.

16

privilege against self-incrimination, to respond to a
material question approved by the court or to testify.

In his response, the debtor asserts that there is no § 727(a)(6)
issue in this proceeding. The court disagrees. Arc's amended
complaint objecting to discharge is based, in part, on the
debtor's failure, after the bar date, to comply with a court-
authorized subpoena requesting production of documents under Rule
2004. *See* § 727(a)(6)(A) (denial of discharge based on debtor's
refusal "to obey any lawful order of the court . . . ."). A
duly authorized Rule 2004 subpoena constitutes a court order.
*See Waste Conversion, Inc. v. Rollins Envtl. Servs.*, 893 F.2d
605, 613 (3d Cir. 1990) ("I doubt that there is any lawyer in the
United States who does not know that a subpoena is a court order
and remains such until vacated or discharged by the
court."(Sloviter, concurring)); *Martin v. Neil*, 2009 WL 1161009,
at *1 n.1 (E.D.N.Y. April 28, 2009) ("A subpoena is a court order
that requires the recipient to provide specified information.");
*Higginbotham v. KCS Int'l*, Inc., 202 F.R.D. 444, 455 (D. Md.
2001) ("Even though subpoenas are issued by attorneys, they are
issued on behalf of the Court and should be treated as orders of
the Court.").

Section 727(a)(6)(A) uses the term "refused" not "failed."
Accordingly, for the section to apply, a plaintiff must show a
willful and intentional failure to comply with an order. *Smith*

17

*v. Jordan (In re Jordan)*, 521 F.3d 430, 433-34 (4th Cir. 2008);

*McDow v. Gardner (In re Gardner)*, 2008 WL 2766079, at *3 (Bankr.

D.D.C. July 14, 2008).  As explained in *In re Gardner*, at *3:

> The party objecting to discharge must demonstrate willful
> and intentional disobedience of the court order.  This
> burden is satisfied, initially, by demonstrating that the
> debtor received the order in question and failed to
> comply with its terms.  Apparently based on the
> assumption that in the absence of an explanation for the
> failure to comply, it can be inferred that the failure
> was a refusal, the burden then shifts to the debtor to
> explain noncompliance with the order.  Once a debtor
> produces evidence explaining the non-compliance, the
> ultimate burden of persuasion rests with the plaintiff to
> show that the failure was willful and intentional.

[Citations omitted.]

There is a case, decided under the Bankruptcy Act, that

suggests that the bankruptcy court has discretion to grant a

discharge even when there was a refusal to comply with a court

order, and lists factors bearing on such discretion.  *See In re

Kokoszka*, 479 F.2d 990, 997-98 (2d Cir. 1973), *aff'd as to

different issues sub. nom. Kokoszka v. Belford*, 417 U.S. 642

(1974)*,* stating that:

> before denying a discharge [when an order has not been
> followed], the referee should weigh the detriment to
> the proceedings and the dignity of the court against
> the potential harm to the debtor if the discharge is
> denied.  He should consider such factors as the intent
> behind the bankrupt's acts--were they wilful or was
> there a justifiable excuse; was there injury to the
> creditors; and is there some way that the bankrupt
> could make amends for his conduct.

To the extent that this passage from *In re Kokoszka* can be read

as holding that the bankruptcy court has discretion to grant a

discharge despite the bankruptcy court's finding that there was a refusal to comply with a court order, it goes too far.  When there *is* a refusal to comply with a court order, § 727(a)(6) is clear and unambiguous that a discharge is not to be granted. Yet, the court's fact finding regarding the underlying question of whether a "refusal" existed is, itself, an exercise of the court's discretion insofar as the court takes into account all factors bearing on whether the plaintiff has shown that the debtor willfully and intentionally failed to comply with the order, and the court's finding is not to be set aside unless it was clearly erroneous.

Some of the factors mentioned in *In re Kokoszka* bear on the exercise of *that* discretion.  In determining whether there was a refusal, a pertinent inquiry may be whether the debtor had a motive to fail to comply (namely, whether the debtor realized that by not complying he would injure creditors and thereby benefit himself).  Similarly, if the debtor makes amends for his conduct, that may be evidence supporting an inference that he did not willfully and intentionally fail to comply in the first place.  And the severity of the detriment to the proceedings may bear on whether the debtor understood he had an obligation he could not shirk.  A debtor, however, is not entitled to a discharge if, after the court exercises the discretion accorded it in finding facts, the court concludes that there *was* a refusal

19

to comply with a court order.  In any event, the factors discussed in *In re Kokoszka* are not elements of a claim for denial of discharge, and need not be pled as part of a complaint to deny discharge.

At a prior hearing, the debtor's attorney argued that a debtor's failure to comply with a subpoena that was issued after the bar date should not be a valid basis for objecting to discharge given that the objection to discharge itself should have been filed before the subpoena was even issued.  The court disagrees.  Arc was entitled to examine the debtor's affairs even after the deadline for discharge has expired.

Arc's counsel represented at the hearing on Arc's Rule 4004(b)(2) motion that the debtor's production of records was incomplete, and that the debtor promised at the Rule 2004 examination to produce additional documents, but has failed to do so.  The debtor's counsel represented that the debtor produced all he had that was required to be produced.  Ordinarily, a failure to comply with a subpoena results in a motion for contempt to compel compliance, and an order (if appropriate) compelling compliance.  Here, that did not occur and the issues are not crystallized, suggesting that there may be issues regarding:

- what subpoenaed papers the debtor was obligated to produce (if he had them);

20

- the extent to which he had such papers;

- whether any initial failure to produce was based on mistake or on erroneous advice of counsel; and

- whether there was a clear understanding as to how soon the debtor was to produce any missing papers.

Nevertheless, despite Arc's failure to take steps to obtain a further order adjudicating any such issues, there could be a refusal to comply with the subpoena if the debtor's obligations were clear and the debtor intentionally and willfully failed to comply.  Arc has shown cause for an extension of time under Rule 4004(b) to be allowed to pursue this claim.

III

In accordance with the foregoing, it is

ORDERED that within 14 days after entry of this order, Arc is granted leave to file a further amended complaint in *Arc Construction v. Lusane*, Adv. Pro. No. 12-10022, limited to those claims that the decision above has determined may be asserted pursuant to Rule 4004(b)(2).

[Signed and dated above.]

Copies to: All counsel of record.